UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION,<br><br>      Plaintiff,<br><br>      v.<br><br>ALLIED WORLD NATIONAL INSURANCE COMAPNY, *et al.*<br><br>      Defendants. | Civil Action No. 23-1745<br><br>Judge Beryl A. Howell |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is a discovery motion filed, pursuant to Federal Rule of Civil Procedure 37(a), by defendants Allied World National Insurance Company and National Union Fire Insurance Company of Pittsburgh, PA (collectively, "defendants"), seeking an order to compel plaintiff Federal National Mortgage Association ("Fannie Mae") to produce 31 documents, described as containing confidential supervisory information ("CSI"), *see* 12 C.F.R. Part 1214, and withheld on the basis of the bank examination privilege. Defs.' Mot. to Compel ("Defs.' Mot."), ECF No. 27. In compliance with the discovery dispute resolution process set out in the Standing Order ¶ 9, ECF No. 5, the parties initially jointly submitted this dispute informally to the Court, via email, on May 22, 2024, after which defendants were permitted to file the pending motion, *see* Min. Order (May 24, 2024). By the time the pending discovery motion was filed, on June 28, 2024, and ripe for resolution, on August 9, 2024, the number of disputed documents had dropped from 179 to 31, consisting of 25 transmittal emails and six documents exchanged between Federal Housing Finance Agency ("FHFA") and Fannie Mae in connection with an FHFA examination. Defs.' Mot., Ex. 11, Fannie Mae's Supplemental

1

Privilege Log for FHFA Discovery Dispute ("Privilege Log") at 1-2, ECF No. 27-13. Notwithstanding that three months have been spent litigating this discovery issue, with the parties' positions supported by almost 300 pages in submissions to the Court, the resolution is simple, straight-forward and may be brief.  For the reasons explained below, this motion is denied for failing to exhaust the administrative procedures provided in 12 C.F.R. Part 1215.

I.      BACKGROUND

In June 2023, Fannie Mae filed this lawsuit against defendants, seeking insurance coverage for a settlement the former had reached in an underlying discrimination lawsuit.  Defs.' Mem. Supp. Mot. to Compel ("Defs.' Mem.") at 2, ECF No. 27.  Following entry of a Scheduling Order, Min. Order (Sept. 11, 2023), in accord with the proposed schedule outlined in the parties' Joint Rule 26(f) Report and Discovery Plan, ECF No. 16, the parties have been in discovery since September 11, 2023.  In response to defendants' requests for production, Fannie Mae has withheld the contested 31 documents that involve communications or information shared between Fannie Mae, which is a regulated government-sponsored enterprise, and its regulator and conservator, FHFA.  Compl. at ¶ 4, ECF. No. 1; Privilege Log at 1-2.  The privilege log justifies the withholding, expressing the view that the documents at issue are protected by the bank examination privilege or contain CSI, as defined by 12 C.F.R. § 1214.1.[1] Privilege Log at 1-2.  Defendants argue that (a) the privilege log provides insufficient

---

[1]     CSI is defined in FHFA regulations, codified in 12 C.F.R. Part 1214, to cover "information prepared or received by FHFA" meeting certain criteria, including that "[t]he information (i) consists of reports of examination, inspection and visitation, confidential operating and condition reports, and any information derived from, related to, or contained in such reports, or (ii) is gathered by FHFA in the course of any investigation, suspicious activity report, cease-and-desist order, civil money penalty enforcement order, suspension, removal or prohibition order, or other supervisory or enforcement orders or actions taken under the Federal Housing Enterprises Financial Safety and Soundness Act of 1992, Public Law 102-550, 122 Stat. 2654." 12 C.F.R. § 1214.1(3).  FHFA's reports of examination of a regulated entity "and all other [CSI] is property of FHFA."  12 C.F.R. § 1214.3(a); *id.* § 1215.17(a) ("FHFA [CSI] is the property of the FHFA.").  These regulations in Part 1214 are issued pursuant to 15 U.S.C. §§ 301, 552; 12 U.S.C. §§ 4501, 4513, 4522, 4526, 4639.

information to allow assessment of the asserted privilege; and (b) even if the applicability of the asserted privilege were established, defendants have good cause to overcome the privilege. Defs.' Mem. at 10-15.

Evincing an effort to produce the documents, Fannie Mae submitted written requests to FHFA, on December 15, 2023, and February 6, 2024, seeking the FHFA's approval to disclose the documents because the bank examination privilege and regulatory protections governing CSI disclosure are held and controlled by FHFA and cannot be waived by Fannie Mae. Pl.'s Opp'n to Defs.' Mot. to Compel ("Pl.'s Opp'n"), Attachment 1, Decl. of J. Marcus Meeks ("Meeks Decl.") at ¶¶ 3-6, ECF No. 29-1. According to Fannie Mae, FHFA denied the requests, Meeks Decl. at ¶¶ 3-6, a representation that defendants do not dispute.

During the meet-and-confer process over defendants' document production requests, Fannie Mae advised defendants to follow the administrative process provided in 12 C.F.R. Part 1215 to request the documents directly from FHFA. Pl.'s Opp'n at 6, ECF No. 29. These regulations, which are promulgated under the statutory authority provided in 5 U.S.C. § 301 and 12 U.S.C. § 4526, direct a party seeking documents withheld because they contain CSI to submit a written request to the FHFA General Counsel. 12 C.F.R. §§ 1215.7(a)-(b), 1215.8(b)-(c).[2] If

---

[2] The FHFA relied upon the Supreme Court's construction of the broad congressional grant of power to agencies, pursuant to 5 U.S.C. § 301, to "promulgate regulations that govern how the agency will respond to third party subpoenas and requests for documents." *Agility Pub. Warehousing Co. K.S.C.P. v. U.S. Dep't of Def.*, 246 F. Supp. 3d 34, 41 (D.D.C. 2017) (citing *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462, 467-68 (1951). Specifically, agency heads are authorized to "prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property." 5 U.S.C. § 301. The reason for such "housekeeping" rules is "obvious" "when one considers the variety of information contained in the files of any government department and the possibilities of harm from unrestricted disclosure in court." *Touhy*, 340 U.S. at 468; *see also Boron Oil Co. v. Downie*, 873 F.2d 67, 70 (4th Cir. 1989) (stating that the purpose of *Touhy* regulations is "to conserve governmental resources where the United States is not a party to a suit, and to minimize governmental involvement in controversial matters unrelated to official business."). These were among the explicit purposes of FHFA's regulations on responding to third-party requests for information and documents. S*ee* Final Rule, Production of FHFA Records, Information, and Employee Testimony in Third-Party Legal Proceedings, 78 Fed. Reg. 39,959, 39,960 (July 3, 2013) (describing "responding to these [third-party] demands or requests" as "burdensome, may disrupt an agency employee's work schedule significantly, may involve the agency in issues unrelated to its responsibilities, may divert agency resources from

the FHFA General Counsel rejects the request, the party may serve a third-party subpoena for the documents. 12 C.F.R. § 1215.8(a); *see also id.* § 1215.3 (defining demand to include "a subpoena"). If the subpoena demand is also rejected, the party may file "a petition to FHFA for reconsideration" of the decision not to produce documents responsive to the subpoena.  12 C.F.R. § 1215.14(b).  FHFA's denial of the reconsideration request is final, and "[p]ursuant to [5 U.S.C. § 704], a petition to FHFA for reconsideration of a final determination . . . is a prerequisite to judicial review." *Id*.

Rather than follow that administrative path, defendants instead filed the instant motion to compel production of the withheld 31 documents directly from Fannie Mae.  According to defendants, following the steps outlined in the regulations would be "illogical" because Fannie Mae communicated to defendants that FHFA reviewed the motion and needed additional time to "assess[] the issues raised in the motion and evaluat[e] next steps."  Defs.' Reply Mem. Supp. Mot. to Compel ("Defs.' Reply") at 11, ECF No. 30.  Defendants "presume[ed] [that] one of the 'next steps' evaluated by FHFA, was whether it would intervene in the action or, instead, would sit back to rest on [Fannie Mae's] assertions." *Id.* at 11-12.  FHFA did not act, and defendants apparently construed the agency's lack of intervention as a signal that defendants did not need to follow the administrative procedures. *Id.*  Defendants' jump to the conclusion that they may bypass the administrative process is a leap too far and dooms their request.

## II.     DISCUSSION

---

accomplishing mission-critical functions, and may impede the agency's accomplishment of its mission and goals," and explaining that the purpose of regulations "to address the submission, evaluation, and processing of [third-party] demands or requests" is to "alleviate these difficulties by ensuring timely notice and centralized, objective decision making[,] . . . . ensure a more efficient use of agency resources, minimize the possibility of involving FHFA in issues unrelated to its mission, promote uniformity in responding to demands or requests, and maintain the impartiality of FHFA in matters that are in dispute between other parties," and "serve the interests of FHFA in protecting sensitive, confidential and privileged information and records that are generated and compiled in the performance of official duties.").

4

The bank examination privilege exists to protect open communication between banks and their regulators, *In re Subpoena Served Upon Comptroller of Currency ("Fleet")*, 967 F.2d 630, 633-34 (D.C. Cir. 1992), and is related to the regulatory protection afforded to CSI.[3] As the D.C. Circuit has explained: "[T]he bank examination privilege is firmly rooted in practical necessity. Bank safety and soundness supervision is an iterative process of comment by the regulators and responses by the bank. The success of the supervision therefore depends vitally upon the quality of the communication between the regulated banking firm and the bank regulatory agency." *Id*. at 633. The regulatory entity holds the privilege. *See In re Bankers Trust Co.*, 61 F.3d 465, 470 (6th Cir. 1995) ("The bank examination privilege belongs to the [regulator], and therefore, where a claim of the privilege is appropriate, the [regulator] must be allowed the opportunity to assert the privilege and the opportunity to defend its assertion."); *accord Schreiber v. Soc'y for Sav. Bancorp, Inc.*, 11 F.3d 217, 220 (D.C. Cir. 1993) ("The agency asserting the privilege has the burden of establishing its applicability to the documents at issue" and, "[i]f the agency fails to establish the privilege with respect to the subpoenaed material, then the documents must be produced." (internal citations omitted)).

While Fannie Mae is not a bank in the traditional sense, the bank examination privilege is applied to communications between this enterprise and the FHFA because the same policy and practical concerns are implicated in terms of the need for effective day-to-day regulation and the necessity of maintaining public confidence in the financial system. *See Syron v. Fed. Hous. Fin.*

---

[3] The bank examination privilege and CSI are related concepts but present distinct bases for a party to withhold information. The bank examination privilege is a common-law privilege, without a statutory "underpinning." Eric B. Epstein, *Why the Bank Examination Privilege Doesn't Work as Intended*, 35 Yale L.J. on Reg. Bull. 17, 22 (2017). By contrast, CSI is defined in and protected by regulations issued pursuant to authorizing federal statutes. Here, documents withheld on the basis of the bank examination privilege necessarily fall within 12 C.F.R. Part 14's broad definition of CSI, *see supra* n.2, for which 12 C.F.R. Part 15 provides the administrative process to request disclosure directly from the FHFA. Defendants, at least at this procedural juncture, raise no objection to the FHFA's authority to issue these regulations defining and controlling disclosure of CSI.

5

*Agency*, No. 1:14-mc-359, 2014 WL 12623047, at *4 (D.D.C. Dec. 31, 2014) (third-party subpoena enforcement action against FHFA for production of bank examination privileged records in connection with civil suit against former executives of the Federal Home Loan Mortgage Corporation or "Freddie Mac," another government-sponsored enterprise chartered by Congress, like Fannie Mae); *Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, 978 F. Supp. 2d 267, 273 (S.D.N.Y. 2013) (finding that "the distinctive necessity for candid and informal regulation of the banking sector—stemming from both practical necessity of day-to-day bank regulation, as well as from necessity to maintain public confidence in the financial system—which undergirds the bank examination privilege, applies also to FHFA's regulation of [Fannie Mae and Freddie Mac].").

Both sides agree here that, when determining whether an agency has properly withheld documents on the basis of the bank examination privilege, the Court must engage in a two-step inquiry. Defs.' Mem. at 11-15; Pl.'s Opp'n at 6-8. First, "the district court . . . determine[s] whether the banking agency has shown that the requested documents are not primarily factual in nature." *Schreiber*, 11 F.3d at 220. If the agency demonstrates that the requested documents "are not primarily factual . . . the court must then determine whether the documents can be redacted." *Id.* Second, if the documents are "inextricably intertwined" with factual and privileged material, "the court must determine whether the privilege, which is qualified, should be overridden for good cause and the documents produced." *Id.* In *Schreiber*, the Circuit identified the following five considerations to weigh in resolving the "competing interests" of the party seeking the documents and regulatory agency withholding the documents:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the seriousness of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Id.* (internal quotation marks and citation omitted).

The parties diverge, however, on whether the analysis prescribed in *Schreiber* may be appropriately performed in the current procedural posture, in the absence of FHFA. *Compare* Defs.' Mem. at 11-15, *with* Pl.'s Opp'n at 6-8. Indeed, prior to engaging in *Schreiber*'s two-step inquiry, district courts routinely dismiss motions to compel the production of documents claimed to be covered by the bank examination privilege or that contain CSI when the moving party failed to exhaust administrative processes to obtain the documents directly from the agency holding the privilege. *See Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*, 367 F. Supp. 3d 267, 280 (M.D. Pa. 2019) (denying motion to compel documents from opposing party and third-party agencies served with a subpoena when documents at issue were purportedly protected by the bank examination privilege and CSI regulations because "courts should deny a party's motion to compel disclosure of an agency's confidential supervisory information when a litigant fails to submit information required by that particular agency's Touhy regulations"); *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-cv-7126, 2016 WL 6779901, at *6 (S.D.N.Y. Nov. 16, 2016) (denying motion to compel production of documents from the opposing party that it alleged were protected by the bank examination privilege and CSI regulations where the movant failed to pursue the "established administrative process" in obtaining documents directly from regulatory agency); *In re JP Morgan Chase Mortg. Modification Litig.*, No. 11-md-02290, 2012 WL 5947757, at *2 (D. Mass. Nov. 27, 2012) (denying motion to compel "the production of privileged [bank] examination information until [the movant] ha[s] first contacted the agency that holds the privilege and followed the agency's procedures for obtaining information"); *In re Countrywide Fin. Corp. Sec. Litig.*, No. 07-cv-5295, 2009 WL 5125089, at *2 (C.D. Cal. Dec. 28, 2009) (denying motion to compel a deponent to testify regarding documents containing CSI

and protected by the bank examiner privilege because the movant "must first exhaust all administrative procedures and submit requests to use the documents in this litigation"). Defendants offer no compelling reason to depart from such well-trodden ground.

Consistent with this administrative exhaustion requirement, in this Circuit, cases analyzing motions to compel the production of documents withheld on the grounds of the bank examination privilege and CSI classification have arisen only after the requesting party administratively exhausted its request and brought a subpoena enforcement action against the regulatory agency.  For example, in *Fleet*, the D.C. Circuit meticulously described the process the moving party underwent before seeking court intervention.  967 F.3d at 632.  The plaintiff: (1) sought the documents from the opposing party, which declined production because the requested information contained CSI; (2) then directly asked the Office of the Comptroller of the Currency ("OCC") and the Federal Reserve Board for the records; (3) then, after the agencies refused on grounds of the bank examination privilege and deliberative process privilege, served the agencies with a subpoena; (4) then, after the agencies refused to comply with the subpoena, moved to compel compliance with the subpoena in federal district court.  *Id.*  Similarly, in *Hous. Bus. J., Inc. v. OCC, U.S. Dep't of Treasury*, 86 F.3d 1208, 1212 (D.C. Cir. 1996), the Court surmised that litigants, who were seeking from the OCC documents withheld based on the bank examination privilege, routinely file in district court "*to enforce a subpoena . . . against the Comptroller.*" (emphasis added).  Finally, in *Lundy v. Interfirst Corp.*, 105 F.R.D. 499, 501, 501 n.2 (D.D.C. 1985), before ruling on the movant's motion to compel the OCC to produce documents, the district court specifically observed that the plaintiff unsuccessfully sought the documents through the administrative process before serving a subpoena on the agency and moving to compel the agency to produce the documents.  These examples echo the bedrock

principle that, "[t]he reports and records gathered or created by the agencies in the course of performing their regulatory responsibilities are deemed the records of the agencies; thus, the information [plaintiff] requests is available from [defendant] only with the permission of the agencies." *Schreiber*, 11 F.3d at 222.  By contrast, here, defendants did not serve FHFA directly with any document demand to evaluate, and thus, the pending motion to compel is directed at the wrong party and premature for resolution by the Court.

Defendants rely on *In re Bankers Trust Co.*, 61 F.3d 465, 470 (6th Cir. 1995), to reason that they do not need to request the documents from FHFA in order to compel Fannie Mae to produce the documents through the pending motion.  Defs.' Reply at 10-11.  In that case, the Sixth Circuit opined that requiring a litigant to "initiate the much more cumbersome procedure of serving a subpoena on [the agency under its housekeeping regulations] simply to enable [that litigant] to obtain the same documents that [opposing party] possesses" is "illogical" and would result only in "needless delays."  *In re Bankers Tr. Co.*, 61 F.3d at 471.  Deflating this otherwise-strong language is the dispositive fact that the plaintiff in *In re Bankers Trust Co.* had already administratively exhausted their document request with the agency before seeking judicial intervention.  *Id.* at 468.

Furthermore, rather than being "illogical," following the administrative process to request documents containing CSI and subject to the bank examination privilege directly engages the agency privilege holder in resolution of disputes over application of the privilege and whether this qualified privilege should be overcome with compelled production, in whole or part, of the requested documents.  Precedent in this circuit confirms that the agency, as the privilege holder and owner of the CSI, must have an opportunity to evaluate defendants' requests and defend its decision as to the privileged status of the documents.  *Fleet*, 967 F.2d at 634 ("Each time [the

9

privilege] is asserted the district court must undertake a 'fresh balancing of the competing interests.'" (quoting *In re Franklin Nat'l Bank Sec. Litig.*, 478 F. Supp. 577, 583 (E.D.N.Y. 1979)); *see e.g., Syron*, 2014 WL 12623047, at *12 (evaluating the agency's arguments for withholding documents under the balancing test announced in *Schreiber*); *United W. Bank v. Off. of Thrift Supervision*, 853 F. Supp. 2d 12, 16-19 (D.D.C. 2012) (same); *In re Providian Fin. Corp. Sec. Litig.*, 222 F.R.D. 22, 29 (D.D.C. 2004) (same); *In re Midlantic Corp. S'holder Litig.*, Misc. No. 92-99, 1994 WL 750664, at *3-6 (D.D.C. Oct. 24, 1994) (same).[4]

Put simply, defendants must first follow the administrative process to request from FHFA the 31 documents purportedly subject to the bank examination privilege and containing CSI that they believe are improperly withheld.

### III. CONCLUSION AND ORDER

For the foregoing reasons, it is hereby—

**ORDERED** that defendants' Motion to Compel, ECF No. 27, is DENIED.

**SO ORDERED.**

---

[4] For similar reasons, defendants' request for *in camera* review of the contested documents to "evaluate the validity" of Fannie Mae's assertions of evidentiary protections, is rejected. Defs.' Reply at 5. Without the benefit of FHFA's insight, such a review would be premature and an inefficient use of judicial resources for several reasons. Defendants' request appears to be predicated on the flawed assumption that Fannie Mae would assert the same protections as FHFA over the 31 withheld documents and thereby serve as an appropriate "stand-in," but this Court will not so readily depend on a regulated entity to define the interests of its regulator. FHFA, as holder of the privilege and owner of CSI, is in the best position to determine in the first instance whether the documents are subject to the evidentiary protections. Urging *in camera* review now is thus best characterized as another attempt by defendants to bypass the administrative process and avoid FHFA's direct involvement in asserting any CSI and privilege protections. Moreover, this request for *in camera* review for a threshold judicial determination whether the contested documents contain CSI or are subject to the bank examination privilege would short-circuit the test and process contemplated in *Schreiber*. There, the D.C. Circuit instructed that "[i]f the district court proceeds to an *in camera* inspection, it should not have to comb through . . . material . . . to determine whether each particular document is primarily factual in nature or, if a mixture of facts and opinion, whether the facts are segregable," 11 F.3d at 221, and instead suggested that the agency create a "*Vaughn*-type index" and, with such an index "in hand, the court could review all or . . . a representative sampling of the disputed documents" to determine if the documents fall within the purview of the bank examination privilege. *Id.* While *in camera* review to evaluate FHFA's privilege determinations may, at some point, be advisable, doing so now, as defendants' urge, without the benefit of FHFA's input in a "*Vaughn*-type index" would be counter-productive and inefficient for both the Court and the parties.

Date: September 30, 2024

_____
**BERYL A. HOWELL**
United States District Judge